UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLE PETERSON,<br><br>                    Plaintiff,<br><br>          -against-<br><br>NEW YORK CITY HEALTH + HOSPITALS<br>CORPORATION,<br><br>                    Defendant. | **COMPLAINT**<br><br>**Civil Action No.:**<br><br>Jury Trial Demanded |

DANIELLE PETERSON ("Plaintiff"), by and through their attorneys, STEVENSON MARINO LLP, as and for their Complaint against NEW YORK CITY HEALTH + HOSPITALS CORPORATION ("Defendant" or "NYCHHC"), alleges upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1.      This is a civil action for damages and equitable relief based upon violations that Defendant committed of Plaintiff's rights guaranteed to them by: (i) the gender discrimination and gender identity discrimination provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. § 296(a); (ii) the gender and gender identity discrimination provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a); (iii) the disability discrimination provisions of the NYSHRL, N.Y. Exec. § 296(a); (iv) the disability discrimination provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a); (v) the retaliation provisions of the NYSHRL, N.Y. Exec. § 296(7); (vi) the retaliation provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(7); and (vii) any other claim(s) that can be inferred from the facts set forth herein.

1

2. As described below, following a protected complaint after enduring repeated discriminatory conduct directed at them based on their gender and gender identity, Defendant terminated Plaintiff's employment at NYCCHR by non-renewing their residency on the basis of their gender, gender identity, being regarded as disabled, and/or on the basis that they engaged in protected activity under the NYSHRL and the NYCHRL.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

5. At all relevant times herein, Plaintiff, who is a resident of New York, worked for Defendant in New York, and was an "employee" entitled to protection as defined by the NYSHRL, and the NYCHRL.

6. At all relevant times herein, Defendant was a New York corporation with its principal place of business at 125 Worth Street, New York, New York 10013. During the relevant period, Defendant employed at least fifteen employees and thus is an "employer" within the meaning of the NYSHRL, and the NYCHRL.

---

[1] Plaintiff filed a Charge with the Equal Employment Opportunity Commission, Charge Number 520-2026-00513, on October 24, 2025, and intends to seek leave to amend the Complaint to add claims under Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act following the issuance of the Notice of Right to Sue.

**BACKGROUND FACTS**

7. NYCHHC is a New York City hospital organization, which operates the dermatology residency program at New York Medical College ("NYMC") located at Metropolitan Hospital Center.

8. Plaintiff, who resides at 93 Owl Ridge Road, Woodbury, Connecticut 06798, is a doctor and former resident NYMC.

9. Defendant employed Plaintiff as a PGY-4 resident at NYMC.

10. Upon arriving at the residency program, Plaintiff disclosed their nonbinary identity to Program Director, Dr. Marian Russo, which was necessary due to previous experiences with bullying and discrimination at their prior residency program.

11. Dr. Russo immediately instructed Plaintiff "not to tell anyone" of their gender identity or pronouns and "not to disclose [their] identity," effectively forcing Plaintiff to conceal their authentic gender identity as a condition of participation in the residency program.

12. Plaintiff warned Dr. Russo that if there were issues with their identity, they would not feel safe in the program, demonstrating their vulnerability due to their previous experience of discrimination.

13. This demand to remain closeted created an immediate hostile work environment and established a pattern of NYCHHC's refusal to acknowledge or respect Plaintiff's gender identity from the outset of their employment.

14. On September 13, 2023, administrative staff member Magali Cruz requested an updated photograph of Plaintiff because Department Chair, Dr. Bijan Safai, complained that Plaintiff did not resemble their photograph and had "tricked them" when interviewing for the position.

3

15. Dr. Safai's comments reflected discriminatory animus based on appearance stereotypes relating to gender and suggested that Plaintiff had somehow been deceptive during the interview process, creating a hostile work environment based on their gender and non-binary identify from the beginning of their residency.

16. These early incidents established a toxic culture within the program regarding appearance standards, particularly targeting individuals assigned female at birth, and demonstrated the NYCHHC's pattern of discriminatory conduct.

17. Throughout Plaintiff's tenure, Dr. Safai made numerous disparaging comments about women in the program, repeatedly stating there were "too many of them" and lamenting that women outnumbered "our only guy" in the program.

18. Dr. Safai consistently expressed the view that women cause "drama" while men "get the work done," revealing deeply embedded gender stereotypes and bias that created a hostile environment for all individuals he perceived as women, including Plaintiff.

19. In one particularly egregious incident, Dr. Safai made derogatory comments about co-resident Anjelica's physical appearance, telling her that "her nose was not straight, had a bump, and looked bad," demonstrating a pattern of appearance-based harassment targeting women and individuals assigned female at birth.

20. These comments created a pervasive atmosphere of hostility based on gender stereotypes and established the toxic environment in which Plaintiff was forced to work while concealing their true gender identity.

21. On July 19, 2024, Dr. Russo had issued a letter certifying that Plaintiff was "in good standing."

22.     On September 4, 2024, during a conversation with faculty member Dr. Pereira and co-resident Michael Vittori, Plaintiff disclosed that they had written a play featuring nonbinary characters.

23.     Dr. Pereira responded by claiming "there is no reason why non-binary people shouldn't be out in this day and age," demonstrating his lack of understanding of the discrimination and violence faced by transgender and nonbinary individuals.

24.     When Plaintiff attempted to educate Dr. Pereira about the documented violence and discrimination against trans and nonbinary people, Dr. Pereira stated he "didn't believe it" and callously suggested that "trans/enby people likely perpetuated the violence" against themselves.

25.     Plaintiff subsequently sent Dr. Pereira articles documenting the alarming rates of violence and death faced by transgender and nonbinary individuals, to which Dr. Pereira responded by blaming such violence on "religion and low IQ."

26.     On September 4, 2024, when Plaintiff submitted a wellness day request via email, Dr. Russo replied stating she was "getting lost in all the pronouns and prepositions," directly mocking Plaintiff's gender identity and use of they/them pronouns.

27.     This response constituted deliberate harassment and ridicule of Plaintiff's protected characteristic and demonstrated Dr. Russo's continued hostility toward Plaintiff's gender identity.

28.     Dr. Russo's comment was particularly egregious given her position as Program Director and her responsibility to maintain a professional, non-discriminatory environment for all residents.

29.     On October 30, 2024, during a medical presentation involving a transgender patient, Dr. Marmon repeatedly and deliberately misgendered the patient despite being corrected.

30.     Dr. Marmon then launched into complaints about "inclusive language" allegedly erasing women's issues, creating a hostile environment specifically targeting transgender and nonbinary individuals like Plaintiff.

31.     Co-resident Michael Vittori joined in the discriminatory conduct by defending J.K. Rowling and stating that "transwomen aren't actually women," further contributing to the hostile environment.

32.     Dr. Marmon continued her discriminatory commentary by complaining about not being allowed to discuss race in medical papers, demonstrating a pattern of resistance to inclusive practices and sensitivity toward marginalized groups.

33.     This incident occurred in Plaintiff's presence and was clearly intended to create a hostile environment for any transgender or nonbinary individuals, including Plaintiff, who was forced to endure this discrimination while remaining silent about their own identity due to Dr. Russo's earlier concealment demand.

34.     On November 15, 2024, Dr. Safai harshly admonished Plaintiff and declared that "there was something mentally wrong" with them, demonstrating discriminatory animus based on both Plaintiff's gender identity and perceived mental health status.

35.     Dr. Safai demanded that Plaintiff undergo evaluation by an internal psychiatrist or face non-renewal of their contract, creating a coercive ultimatum that violated Plaintiff's rights under the ADA, NYSHRL, and NYCHRL.

36.     During this confrontation, Plaintiff disclosed their nonbinary identity and shared their experience of facing death threats and violence at their previous residency due to their gender identity.

37.    Following this disclosure, Dr. Safai told a story about knowing a transman who "was a lot uglier after he transitioned" and suggested that Plaintiff "would become ugly too" if they transitioned.

38.    Dr. Safai then threatened to force Plaintiff to take time off, comparing their situation to a previous black resident who was harassed, demonstrating his awareness that Plaintiff was experiencing discriminatory treatment while simultaneously perpetuating it.

39.    Under Dr. Safai's threat of not renewing their residency contract, Plaintiff requested to see an external mental health provider to demonstrate that they were "fit for duty." Dr. Safai initially refused Plaintiff's reasonable request to see an external mental health provider, instead insisting on internal evaluation designed to support predetermined disciplinary action.

40.    On November 21, 2024, during a meeting with a CIR representative, Dr. Russo falsely characterized the psychiatric evaluation as being to better understand how Plaintiff's "brain worked" in order to give them better feedback, misrepresenting the punitive nature of the evaluation.

41.    On December 3, 2024, Dr. Russo finally agreed to allow Plaintiff to see an external provider but demanded a "fit for duty" evaluation be completed by December 6, 2024, creating an unreasonably short timeframe.

42.    The fitness for duty evaluation report consistently used female pronouns when referring to Plaintiff despite their clearly established nonbinary identity, further evidencing the systematic refusal to acknowledge their gender identity.

43.    On December 6, 2024, Dr. Kristen Sadana conducted an independent psychiatric evaluation and found Plaintiff "fully fit to work in all professional capacities required by their position."

44.    Dr. Sadana specifically stated, "I have no concern regarding Plaintiff's mental health or capacity to fulfill their duties as a dermatology resident," directly contradicting NYCHHC's claims about Plaintiff's fitness for duty.

45.    Dr. Russo and Dr. Safai promptly changed their position, claiming Plaintiff could only see the external provider for "establishing care" rather than for the fitness for duty evaluation, moving the goalposts in bad faith.

46.    On December 9, 2024, despite Plaintiff completing an external evaluation that cleared them for duty, they were pulled from clinical duties for refusing to submit to the internal psychiatric evaluation, clearly regarding them as mentally disabled.

47.    On December 11, 2024, Plaintiff made a protected complaint to Jennifer Salcedo, NYMC's Designated Institutional Official. Dr. Salcedo informed Plaintiff that institutional policy was changing and that internal providers no longer conducted fit for duty evaluations, demonstrating that the entire process had been arbitrary and pretextual.

48.    Plaintiff informed Dr. Salcedo that she was never provided with a Performance Improvement Plan, which Dr. Salcedo stated was contrary to NYMC's policy.

49.    NYCHHC kept Plaintiff off of clinical service for an entire month despite having received external clearance for duty, evidencing retaliation for their refusal to submit to the coercive internal evaluation process.

50.    On December 27, 2024, Dr. Ilisse R. Perlmutter conducted a separate fitness for duty evaluation and similarly found that Plaintiff could perform their job functions.

51.    Both external evaluations contradicted NYCHHC's claims about Plaintiff's mental health and fitness for duty, demonstrating that the psychiatric evaluation process was pretextual and discriminatory, and that NYCHHC regarded them as mentally disabled.

8

52.     Following their protected activity in reporting discrimination and refusing to submit to the coercive internal psychiatric evaluation, Plaintiff experienced systematic retaliation.

53.     Plaintiff was being pulled off of papers they had written, denying them academic credit for their scholarly work and damaging their professional development.

54.     Plaintiff was also being skipped over in introductions to outside speakers, deliberately excluding them from professional networking opportunities available to other residents.

58.     Plaintiff was denied educational opportunities that were routinely provided to other residents, further impeding their professional development and training.

59.     On January 15, 2025, during Plaintiff's patient presentation, Dr. Pereira interrupted to ask them "how do you know this patient is a guy? How do you know he's not one of those perverts who identify as something else just to make everyone else's life harder?"

60.     When Plaintiff appeared shocked by this blatantly transphobic statement, Dr. Pereira quickly added, "I'm just kidding, you know I'm joking right?" demonstrating his awareness that his comments were inappropriate while attempting to shield himself from consequences.

61.     This incident occurred in front of co-resident Michael Vittori, further humiliating Plaintiff and normalizing transphobic rhetoric within the program.

62.     Dr. Pereira's characterization of transgender and nonbinary individuals as "perverts" who identify as "something else just to make everyone else's life harder" constituted severe harassment based on gender identity and created an extremely hostile work environment.

9

63.     From January through March 2025, co-resident Katia Erickson frequently referred to Plaintiff as "girl" despite knowing that they were non-binary, demonstrating ongoing deliberate misgendering within the program.

64.     On January 22, 2025, co-resident Banu Farabi used "she" pronouns when referring to Plaintiff in a group text message. When Plaintiff gently corrected this misgendering, they faced continued resistance to proper pronoun usage.

65.     On February 10, 2025, Dr. Safai used incorrect pronouns when discussing Plaintiff in a text message to Dr. Andrew Jarad Peranteau, demonstrating that the discriminatory treatment extended to communications about Plaintiff even when they were not present.

66.     On February 28, 2025, Plaintiff received a remediation plan 105 days after being told their contract would be non-renewed, demonstrating the pretextual nature of the cited performance deficiencies.

67.     On March 28, 2025, Plaintiff was denied access to their personnel file despite having contractual rights under their CIR agreement to review such materials.

68.     On April 24, 2025, Plaintiff received their final non-renewal notice, which stated the reason as they had "not satisfactorily completed [their] formal remediation plan and [they] have not shown improvement in [their] professionalism."

69.     On May 5, 2025, Plaintiff received a statement of charges that included false accusations, further evidencing the pretextual nature of the disciplinary process.

70.     Defendant's decision to deny Plaintiff renewal of their inclusion in the residency program was based upon Defendant's discriminatory animus based on Plaintiff's gender, gender identity, perception of Plaintiff as mentally disabled, and protected complaint of discrimination in violation of Title VII, the ADA, the NYSHRL, and the NYCHRL.

10

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
*Gender Discrimination in Violation of the NYSHRL*

71.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

72.    NYSHRL § 296(a) prohibits employers, because of an employee's sex or gender identity or expression, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

73.    As described above, Defendant discriminated against Plaintiff by subjecting Plaintiff to a hostile work environment and terminating Plaintiff on the basis of their sex or gender identity or expression, in violation of the NYSHRL.

74.    As also described above, Defendant is an employer within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

75.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

76.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT**
*Disability Discrimination in Violation of the NYCHRL*

77.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

11

78.     NYCHRL § 8-107 prohibits employers, because of an employee's actual or perceived gender, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

79.     As described above, Defendant discriminated against Plaintiff by subjecting Plaintiff to a hostile work environment and terminating Plaintiff on the basis of their actual or perceived gender, in violation of the NYCHRL.

80.     As also described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

81.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

82.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANT**
*Disability Discrimination in Violation of the NYSHRL*

83.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

84.     NYSHRL § 296(a) prohibits employers, because of an employee's disability, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

12

85.     As described above, Defendant discriminated against Plaintiff by subjecting Plaintiff to a hostile work environment and terminating Plaintiff on the basis of their disability, or regarding them as disabled, in violation of the NYSHRL.

86.     As also described above, Defendant is an employer within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

87.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

88.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Disability Discrimination in Violation of the NYCHRL*

89.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

90.     NYCHRL § 8-107 prohibits employers, because of an employee's disability, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

91.     As described above, Defendant discriminated against Plaintiff by subjecting Plaintiff to a hostile work environment and terminating Plaintiff on the basis of their disability, or regarding them as disabled, in violation of the NYCHRL.

13

92.     As also described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

93.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

94.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the NYSHRL*

95.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.     NYSHRL § 296(7) prohibits an employer from retaliating against an employee who has engaged in protected activity under the NYSHRL.

97.     As described above, Defendant is an employer within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

98.     As also described above, after Plaintiff engaged in activity protected under the NYSHRL, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

99.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

100.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

101.    Defendant's unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Retaliation in Violation of the NYCHRL*

102.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103.    NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has engaged in protected activity under the NYCHRL.

104.     As described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

105.    As also described above, after Plaintiff engaged in activity protected under the NYCHRL, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

106.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

107.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

15

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

108. Defendant's unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

**DEMAND FOR A JURY TRIAL**

109. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. An order granting preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

d. An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or equitable in nature, including back pay, front pay, liquidated damages, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendant's unlawful conduct;

16

e.      An award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputations and loss of career fulfillment in connection with Plaintiff's claims;

f.      An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with Plaintiff's claims;

g.      An award of punitive damages to the extent permitted by law, commensurate with Defendant's ability to pay;

h.      An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

i.      An award of pre-judgment and post-judgment interest, as provided by law; and

j.      Granting Plaintiff such other and further relief, including equitable relief, as this Court finds necessary and proper.

Dated: White Plains, New York
        March 23, 2026

Respectfully submitted,

STEVENSON MARINO LLP
*Attorneys for Plaintiff*
445 Hamilton Avenue, Suite 1500
White Plains, New York 10601
Tel.    (212) 939-7229
Fax.    (212) 531-6129

By:    _____
        JEFFREY R. MAGUIRE

17